IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 21-cv-01052-PAB-KLM

JOEL SPECKMAN, and
CHANNA SPECKMAN,

    Plaintiffs,

v.

MINUTEMAN FINANCIAL, INC.,

    Defendant.

---

# ORDER
---

This matter is before the Court on the Motion for Clerk's Entry of Default Judgment Pursuant to Fed. R. Civ. P. 55(b)(1) Against Minuteman Financial, Inc. [Docket No. 44].

## I. BACKGROUND[1]

This dispute arises out of what plaintiffs claim was the wrongful foreclosure of their home. Docket No. 44 at 1. After plaintiffs received notice from Wells Fargo Home Mortgage, N.A. ("Wells Fargo")[2] that their mortgage payments would increase, they sought the assistance of defendant Minuteman Financial, Inc. ("Minuteman") to "obtain[] a loan modification." *Id.* Minuteman "represented" that this was its "area of expertise"

---

[1] Because of the Clerk of Court's entry of default, Docket No. 41, the factual allegations in plaintiffs' complaint, Docket No. 4, are deemed admitted. *See Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003).

[2] Plaintiffs and Wells Fargo stipulated to the dismissal of all claims against Wells Fargo with prejudice. *See* Docket Nos. 39, 40.

and that plaintiffs did not need to hire their own lawyer, which would "likely impede [defendant's] ability to obtain the desired loan modification." *Id.* Plaintiffs believe that Minuteman's recklessness and negligence led to Wells Fargo's foreclosure of their home. *Id.* at 1–2.

Plaintiffs purchased their home in 2007. *Id.* at 3, ¶ 8. Wells Fargo serviced a note that plaintiffs executed, and Wells Fargo held the deed of trust on the home. *Id.*, ¶ 9. The original terms of the note provided for interest-only payments for ten years, after which the payments would include both principal and interest. *Id.*, ¶ 11. In 2017, Wells Fargo notified plaintiffs that their mortgage payment would increase to include both principal and interest, which doubled plaintiffs' monthly payment. *Id.*, ¶ 13. Minuteman had helped plaintiffs with a debt consolidation matter in 2013 and, because of this past relationship, plaintiffs contacted Minuteman to assist in modifying their loan with Wells Fargo. *Id.* at 3–4, ¶¶ 12, 14.

On August 4, 2017, plaintiffs, through Minuteman, sent correspondence to Wells Fargo's CEO "requesting information on the [l]oan" and "suggesting a refinance." *Id.* at 4, ¶ 15. Plaintiffs completed an online application to refinance the loan in November 2017, which Wells Fargo denied. *Id.*, ¶ 16. Minuteman advised plaintiffs to stop making payments on the loan. *Id.*, ¶ 18. Plaintiffs inquired of Minuteman whether there was any risk of eviction if they stopped making payments on the loan, and Minuteman assured plaintiffs that it could help them retain their home even after a foreclosure sale. *Id.*, ¶¶ 19–20. Minuteman also assured plaintiffs that hiring their own lawyer would not help their case and that resolution with Wells Fargo was more likely without involving a

lawyer.  *Id.* at 5, ¶ 21.  In exchange for Minuteman's services, plaintiffs agreed to pay Minuteman $750.00 each month until the loan was modified and an additional fee of 5% of the amount the loan was reduced or forgiven.  *Id.*, ¶ 25.

In reliance on Minuteman's representations, plaintiffs stopped making their monthly mortgage payments to Wells Fargo.  *See generally id.*  On March 19, 2018, Wells Fargo notified plaintiffs that they were in default.  *Id.* at 5, ¶ 27.  Between April 2018 and April 2019, plaintiffs received numerous notices from Wells Fargo regarding the unpaid balance on the loan, which increased monthly.  *See generally id.*  Minuteman continued to advise plaintiffs not to hire their own lawyer or to pay amounts due.  *Id.* at 5, 8, ¶¶ 21, 42.  Minuteman filed numerous loan modification requests and appeals with Wells Fargo, all of which were denied, and Minuteman also filed "requests for information."  *See generally id.*  By June 2018, Wells Fargo informed plaintiffs that the foreclosure process may have begun on their property.  *Id.* at 6, ¶ 34.  In August 2018, Wells Fargo informed plaintiffs that their loan had been "referred to foreclosure."  *Id.* at 8, ¶ 46.  In December 2018, plaintiffs received correspondence from a law firm representing Wells Fargo, which correspondence included a "Notice of Rule 120 Motion for Order Authorizing Sale Response Deadline – January 9, 2019 8:15 a.m."  *Id.* at 11, ¶ 60.  Minuteman, however, failed to advise plaintiffs of any further action necessary to avoid the pending foreclosure.  *Id.*  On April 2, 2019, Wells Fargo informed Minuteman that the April 17, 2019 scheduled foreclosure date would not be extended.  *Id.* at 15, ¶ 85.  On April 16, 2019 at 3:30 p.m., Minuteman called plaintiffs to inform them that their home would be foreclosed the next day, which occurred.  *Id.*, ¶¶ 87–88.

## II. LEGAL STANDARD

In order to obtain a judgment by default, a party must follow the two-step process described in Federal Rule of Civil Procedure 55. First, the party must seek an entry of default from the Clerk of the Court under Rule 55(a). Second, after default has been entered by the Clerk, the party must seek judgment under the strictures of Rule 55(b). *See Williams v. Smithson*, 57 F.3d 1081, 1995 WL 365988, at *1 (10th Cir. June 20, 1995) (unpublished table decision) (citing *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981)).

The decision to enter default judgment is "committed to the district court's sound discretion." *Olcott*, 327 F.3d at 1124 (citation omitted). In exercising that discretion, the Court considers that "[s]trong policies favor resolution of disputes on their merits." *Ruplinger v. Rains*, 946 F.2d 731, 732 (10th Cir. 1991) (quotation and citations omitted). "The default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party." *Id.* It serves to protect plaintiffs against "interminable delay and continued uncertainty as to his rights." *Id.* at 733. When "ruling on a motion for default judgment, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment." *Seme v. E & H Pro. Sec. Co.*, No. 08-cv-01569-RPM-KMT, 2010 WL 1553786, at *11 (D. Colo. Mar. 19, 2010), *report and recommendation adopted*, 2010 WL 1553788 (D. Colo. Apr. 16, 2010); *see also Vibe Tech., LLC v. Suddath*, No. 06-cv-00812-LTB-MEH, 2009 WL 2055186, at *1 (D. Colo. July 10, 2009).

A party may not simply sit out the litigation without consequence. *See Cessna*

*Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444–45 (10th Cir. 1983) ("[A] workable system of justice requires that litigants not be free to appear at their pleasure.  We therefore must hold parties and their attorneys to a reasonably high standard of diligence in observing the courts' rules of procedure.  The threat of judgment by default serves as an incentive to meet this standard").  One such consequence is that, upon the entry of default against a defendant, the well-pleaded allegations in the complaint are deemed admitted.  *See* 10A Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 2688.1 (4th ed., 2020 rev.).  "Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."  *Seme*, 2010 WL 1553786, at *2.  A court need not accept conclusory allegations. *Moffett v. Halliburton Energy Servs., Inc.* 291 F.3d 1227, 1232 (10th Cir. 2002). Although "[s]pecific facts are not necessary" in order to state a claim, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), the well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation and alteration marks omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (quotation and citation omitted).

## III.  ANALYSIS

The Court must first determine whether it has jurisdiction over this case.  *See Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997) (holding that "a district court must determine whether it has jurisdiction over the defendant before entering judgment by default against a party who has not appeared").

### A.  Subject Matter Jurisdiction

Plaintiffs do not address the Court's subject matter jurisdiction in their motion.  *See generally* Docket No. 44.  When plaintiffs filed this lawsuit, they brought ten claims for relief against both Wells Fargo and Minuteman.  *See generally* Docket No. 4.  Two claims against Wells Fargo arose under federal law.  *See id.* at 17–21, ¶¶ 95–128.  At that time, therefore, the Court had jurisdiction pursuant to 28 U.S.C. § 1331.  Now, however, because all claims against Wells Fargo were dismissed, *see* Docket Nos. 39, 40, only plaintiffs' claims against Minuteman remain.  These claims are for (1) violation of the Colorado Consumer Protection Act ("CCPA"), (2) breach of contract, (3) false representation, (4) fraudulent nondisclosure, (5) negligent misrepresentation, (6) breach of the duty of good faith and fair dealing, and (7) negligence per se.  Docket No. 4 at 23-–32, ¶¶ 135–196.  None of these claims arise under federal law.  Thus, in order for the Court to proceed, the Court's subject matter jurisdiction must be based on the diversity of the parties.  *See Niemi v. Lasshofer*, 770 F.3d 1331, 1345 (10th Cir. 2014) ("A defect in subject matter jurisdiction can never be waived and may be raised at any time." (quoting *Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1076–77 (10th Cir. 1999)); *Cunningham v. BHP Petroleum Gr. Brit. PLC*, 427 F.3d 1238, 1245 (10th Cir.

2005) (absent an assurance that jurisdiction exists, a court may not proceed in a case); *Citizens Concerned for Separation of Church & State v. City & Cnty. of Denver*, 628 F.2d 1289, 1297 (10th Cir. 1980) (noting that, in every case and at every stage of the proceeding, a federal court must satisfy itself as to its own jurisdiction).

In their complaint, plaintiffs assert that the Court has diversity jurisdiction under 28 U.S.C. § 1332.  Docket No. 4 at 3, ¶¶ 5–6.  Section 1332 provides, "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  28 U.S.C. § 1332(a).

Plaintiffs' complaint alleges that plaintiffs are "individuals residing in the State of Colorado."  Docket No. 4 at 2, ¶ 1.  "For purposes of federal diversity jurisdiction, an individual's state citizenship is equivalent to domicile."  *Smith v. Cummings*, 445 F.3d 1254, 1259 (10th Cir. 2006).  "To establish domicile in a particular state, a person must be physically present in the state and intend to remain there."  *Id*. at 1260.  Residency, however, is not synonymous with domicile, *see Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) ("'Domicile' is not necessarily synonymous with 'residence,' and one can reside in one place but be domiciled in another.") (citations omitted)), and only the latter is determinative of a party's citizenship.  *See Whitelock v. Leatherman*, 460 F.2d 507, 514 (10th Cir. 1972) ("[A]llegations of mere 'residence' may not be equated with 'citizenship' for the purposes of establishing diversity.").  Courts are to consider the "totality of the circumstances" to determine a party's domicile.  *Middleton v. Stephenson*, 749 F.3d 1197, 1200–01 (10th Cir. 2014).  Although allegations of

residency are generally insufficient to establish citizenship and, therefore, the Court's subject matter jurisdiction, *see Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1224 (10th Cir. 2004) ("The party invoking federal jurisdiction bears the burden of establishing such jurisdiction as a threshold matter."), plaintiffs bought their home in 2007 and used it as their "primary, principal residence" until 2019. Docket No. 4 at 3, ¶ 8. Plaintiffs still live in Colorado. *Id.* at 2, ¶ 1. The Court finds these allegations sufficient to establish the Court's subject matter jurisdiction.

## B.  Personal Jurisdiction

The Court must also have personal jurisdiction over the defendant before default judgment can enter. *See Dennis Garberg & Assoc.*, 115 F.3d at 772 (district court erred in failing to determine personal jurisdiction issue before considering entry of default judgment); *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986) (noting that a judgment is void if the court that enters it lacks jurisdiction over either the subject matter or the parties).

In their motion, plaintiffs do not address whether the Court has personal jurisdiction over Minuteman. *See generally* Docket No. 44. In their complaint, plaintiffs allege that Minuteman is incorporated in Illinois and maintains its principal place of business there. Docket No. 4 at 2, ¶ 3. "A court may assert general jurisdiction over foreign . . . corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S.

915, 919 (2011)). For corporations, "the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quoting *Goodyear*, 564 U.S. at 924). A court may not exercise general jurisdiction over a foreign corporation simply because it has continuous and systematic business contacts with the forum; the affiliations with the state must be so continuous and systematic as to render the corporation essentially at home in the forum state. *Id*. at 139. Plaintiffs do not assert that the Court has general personal jurisdiction over Minuteman, and there are no allegations that Minuteman regularly solicits business or maintains a local office in Colorado; sends agents into the state on a regular basis to solicit business; holds itself out as doing business in Colorado in any way; or conducts a considerable volume of business in Colorado. *See Kuenzle v. HTM Sport–Und Freizeitgerate AG*, 102 F.3d 453, 457 (10th Cir. 1996) (citing *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996)). Thus, the Court considers whether it has specific jurisdiction over Minuteman.

"Specific jurisdiction . . . is premised on something of a *quid pro quo*: in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts." *Dudnikov*, 514 F.3d at 1078. Courts typically make three inquiries to determine if a state's exercise of sovereignty over a defendant can be described as fair and just for specific jurisdiction: "(1) whether the defendant purposefully directed its activities at residents of the forum state; (2) whether the plaintiff's injury arose from those purposefully directed activities; and (3) whether exercising jurisdiction would offend

traditional notions of fair play and substantial justice." *Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013). "[W]here, as here, the [motion for default judgment] is determined on the basis of the pleadings and affidavits, that burden may be met by a *prima facie* showing." *Sharpshooter Spectrum Venture, LLC v. Consentino*, No. 09-cv-0150-WDM-KLM, 2011 WL 3159094, at *2 (D. Colo. July 26, 2011) (citing *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011)).

Plaintiffs have failed to plead any allegations connecting Minuteman with Colorado, and plaintiffs do not specifically argue in their motion that the Court has specific jurisdiction over Minuteman. *See* Docket Nos. 4, 44. It appears that plaintiffs believe that the Court has specific jurisdiction over Minuteman because plaintiffs' injury from Minuteman's alleged actions occurred in Colorado and Minuteman entered into a contract with Colorado residents.

As noted previously, for the Court to have specific jurisdiction over an out-of-state defendant, the minimum contacts standard "requires, first, that the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities." *Dudnikov*, 514 F.3d at 1071 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

Plaintiffs bring both tort and contract claims against Minuteman. *See generally* Docket No. 4. Personal jurisdiction may be found when a defendant has committed a tort against a resident of the forum state. To determine whether a tort against a forum-state resident is sufficient for personal jurisdiction, courts apply "the 'effects test.'" *See*

*Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 96 (10th Cir. 2012) (unpublished) (citing *Calder v. Jones*, 465 U.S. 783 (1984)). In applying the effects test, courts find purposeful direction "if three showings are made: the defendant (a) commits 'an intentional action'; (b) that is 'expressly aimed at the forum state'; (c) with 'knowledge that the brunt of the injury would be felt in the forum state.'" *Id.* (quoting *Dudnikov*, 514 F.3d at 1072)). The complaint contains no allegations on any of these prongs of the effects test. *See generally* Docket No. 4.

As to plaintiffs' contract claims, the Supreme Court has explained that a defendant is not necessarily subject to personal jurisdiction in a forum state simply because he enters into a contract with a party that resides in that forum. *See Burger King*, 471 U.S. at 478 (noting that an individual's contract with an out-of-state party cannot automatically establish sufficient minimum contacts in that party's home forum). Courts in this Circuit have held similarly. *See, e.g.*, *SGI Air Holdings II LLC. v. Novartis Int'l, AG*, 192 F. Supp. 2d 1195, 1202 (D. Colo. 2002) ("Jurisdiction is not proper in Colorado merely because one of the parties to the contract [is] a Colorado resident." (quoting *Ruggieri v. General Well Serv., Inc.*, 535 F. Supp. 525, 535 (D. Colo. 1982))). However, a contract may establish sufficient minimum contacts with the forum state where it has a "substantial connection" with that forum state. *See TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd.*, 488 F.3d 1282, 1288 (10th Cir. 2007); *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223 (1957). The Supreme Court has explained that parties who "'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other state for

11

the consequences of their activities." *Burger King,* 471 U.S. at 473 (*Travelers Health Assn. v. Virginia*, 339 U.S. 643, 647 (1950)). To determine whether a nonresident defendant has purposefully established minimum contacts with the forum state by contracting with another party, the Court looks to "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* at 479; *see also Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004). The complaint is devoid of allegations regarding prior negotiations and contemplated future consequences between plaintiffs and Minuteman, and there are no allegations regarding the terms of plaintiffs' agreement with Minuteman, aside from Minuteman's fees. *See generally* Docket No. 4. Plaintiffs, therefore, have not established the Court's personal jurisdiction over Minuteman.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Motion for Clerk's Entry of Default Judgment Pursuant to Fed. R. Civ. P. 55(b)(1) Against Minuteman Financial, Inc. [Docket No. 44] is **DENIED without prejudice**.

DATED September 26, 2022.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge